I'm here for Mr. and Mrs. Douglas, Jason and Cheryl Douglas. I'd like to talk about basically three things from our brief. The first and probably most important thing in this case is notice. And the notice issue was in the summary judgment that was granted against my clients. And it was based upon an affidavit from a guy named Hootie or Sammy Hootie. And he was the custodian of records in the case. And he said that the notice of acceleration and the notice of the foreclosure sale were sent, were properly sent to Mr. and Mrs. Douglas. We attacked his affidavit on the basis that, first off, it was just conclusory as far as. I thought there was also in the record the actual returned letter saying undeliverable. Right. So why are we worried about an affidavit? I mean, there's hard direct evidence that it was sent and someone at the address, for whatever reason, didn't want it or it was. But I mean, it was sent. That shows that the Postal Service sent it, but it was returned as undeliverable. It was sent, but it wasn't proper. What was in the letter, what was in the foreclosure, was not proper. And that's our. Okay, but that's different than whether it was sent. I thought you were attacking the affidavit because you said he didn't have personal knowledge it was sent and all that. And that what he said in the affidavit was conclusory. He was just making conclusions. He didn't show us the actual acceleration. And if we could look on. You're saying something was sent and returned as undeliverable, but we don't know what was in that envelope. Yeah, we do. It was. And what, what is, so what, I'm confused. What is, what haven't they shown? What hasn't the bank shown on the notices? First off, they didn't give a 30 day notice, excuse me, a notice of acceleration. It was sent on April the 10th of 2017, which was 22 days before the foreclosure sale on May the 2nd of 2017. So clearly, and the notices he sent, he said, he just concluded that this was notice of acceleration. And there has to be a 30 day, if we look at the deed of trust. And we both agree that the deed of trust must be strictly construed. And if we look at the, the deed of trust, there's a copy there's, the deed of trust is all throughout this record, but there's a, the copy I picked was on page 245. And section 22 of the deed of trust, on page 245 of the record on appeal, it says, acceleration remedies. Lenders shall, we all know what shall means, shall give notice to borrower prior to acceleration, following borrower's breach of any covenant or agreement in the security instrument, but not prior to acceleration under section 18 unless applicable law provides otherwise. That doesn't apply. The notice shall specify the default, the action required to cure the default, a date not less than 30 days from the date of the notice is given to borrower by which the default must be cured. And then skipping ahead there, will result in acceleration of the sum secured by the security instrument and sale of property. This must be strictly construed. There are a number of cases that say that. In fact, the Wells Fargo says in their brief on page 20 that it must be strictly construed, the deed of trust. There's another section that I think is very relevant to what we're talking about. This is on page 242, section 15, where it says notices. Any notice to borrower in connection with this security instrument shall, again, shall be deemed to have been given to the borrower when mailed by first class mail or when actually delivered to borrower, borrower's notice address if sent by other means. So the property code provides for sending the notices by certified mail which the property code provides a floor, a minimum. But if we're strictly construing the deed of trust, it should be sent by first class mail also. Why is that important? There is a letter that Wells Fargo sent and it was on March the 13th of 2017. Let me get the page for the court. That, yes, here it is. This is on page 85 of the, of volume one of the record on appeal. Very interesting letter. This was sent, again, as I said, March 13th, 2017. This is from customer service at Wells Fargo. And it says new payment, your new payment will be $3,199.86. And then it says starting May 1st, 2017, your new mortgage payment will be in the amount of $3,199.86. And it says no action required. All right, and this is a fairly standard. Anyone who escrows their home as part of their mortgage payment, escrows their taxes and insurance. Every year, your taxes and insurance change. They almost always go up. And so they have to adjust your escrow payment. This is a standard form letter that I get it every year. It says, now you owe $78 more a month in escrow because the property taxes went up. And you're saying, you're reading this to say that I think your clients had about $20,000 in unpaid mortgage, you're taking this to say no action required. We're just going to forgive, the bank's nice, we're just going to forgive $20,000. I mean, the no action required, what that means is that, don't worry about making up this escrow on the back side, you're going to start going forward with an adjustment. No action's required, because right below it, it says starting May 1st, your new payment will be $3,199. It's saying, you don't have to make a new payment now. Going forward, you're going to have an adjusted escrow. But you read that to say that it's forgiving the loan, unpaid loan amount? My point is, they received this letter. Right. Because it was sent by first class mail, the way the deed of trust provides. The certified letters were not sent, in addition to certified, by first class mail. It's likely, if they received this, the March 13th, 2017 letter, they would have received the foreclosure notice, the acceleration, if it had been sent by first class. We know they didn't receive that, because it said undeliverable. We have the proof of the mail. Someone didn't accept it, apparently. But going back to Mike, I thought this was, the no action required was the basis for your TDCA claim, Texas Debt Collection Act. No, you're abandoning that? No, I'm saying that Wells Fargo did not follow the deed of trust in Section 15, that I just read there a little while ago. In Section 15, it said that notices- When in your brief do you address this issue of the 30 days? The 30 days, in the brief, we talked about, as far as the notice, of course the notice is a big issue. Right. But I had understood it more to be an issue of they didn't get the mail. I didn't understand, you're now making the argument that even assuming Arguendo, this letter was sent, that they say they sent, that that was untimely. So I just want to take another look at that argument in your brief. Where is it? The 30 day argument is not in there, is not in the brief. But the whole question we're talking about here is notice, is giving proper notice. If you look at what Sammy Huda's- Yeah, but the proper notice argument that I have understood you to be making is the one that you were just discussing with Judge Costa about the letter. The argument you made at the beginning of your argument seemed to be more substantive, that even assuming that letter was sent properly, it was untimely and insufficient. That argument I did not gather from your briefing. Yes, we attacked it in the summary judgment response, but we didn't put it in the brief. If the court would look at our summary judgment response, we did talk about Huda's- Okay, and you understand on appeal you need to raise things as the appellant in your brief and not expect us to dig through all the record and find an argument for you that you didn't make. You know that. The thing about it, though, is this is so obviously wrong, his letter. This is, if you look at- Let me ask you, because you're starting to run out of time, I want to get to the TDCA question on the statute of frauds. So, I understand the concept that if you all were trying to enforce an oral agreement, qua oral agreement, that that would be barred by the statute of frauds. Are you seeking damages separate and apart from enforcing the agreement that you're seeking under the TDCA that are separate from saying the agreement was valid? Yes. Okay, so tell me, I know there was mental anguish. Tell me about that. Explain how that is different, because I don't think you can backdoor around the statute of frauds, but I think your argument is you're not asserting something that addresses the statute of frauds, so what is it that you're asserting that is different from trying to enforce an oral agreement? It's, well, of course, it's the text, the TDCA is a separate statute. No, I'm well aware of that, but there's case law kind of all over the place on this, so I'm trying to understand, is there, if what you're trying to do is enforce an oral agreement under the TDCA, then that's your argument, that's fine. But I had the impression you were doing something else. Can you tell me what that is? Yes, I'm contending that the payments, you know, they listed what the payments, the missed payments were, and they misrepresented it. And what harm did that cause? That's a violation under the Texas Debt Collection Act. Right, and what harm did that cause that is different from us enforcing the oral agreement that was reached? Well, because under the TDCA, we can get attorney's fees, court costs, medical bills, pain and suffering, out-of-pocket expenses, loss of equity. It's a— Loss of equity? How do you get loss of equity? Well, under the TDCA, it's whatever is a result of violating the TDCA is, like medical bills. We can get, we've gotten medical bills before under the TDCA because of the stress involved in losing your home. And what is your best case for the proposition that the statute of frauds does not bar a TDCA claim? That the TDCA is a separate statute that applies to debt collectors— I'm sorry, I mean, case site, like case, like that a court decided. Oh, I think we briefed it there in the— No, I'm asking you what's the best of all the cases cited in all of the briefing. What should we look at that best catches the fact that, in your view, statute of frauds simply is not a defense to a TDCA claim? Your Honor, I would say just the statute itself. Okay. And that's the one, that's what I would rely on. What is, because there's a lot floating around in this case. What is the misrepresentation that's the basis for your TDCA claim? Well, they misrepresented the amounts that were due, and they did it in two different letters, March 3rd, and there was another letter of 19, of 2007. But the amount due was wrong only if the oral agreement, oral conversation was enforceable? Let's see, no, it's just what they contended the amount due was. Under the TDCA, it says if the character or the amount of the debt is misrepresented, that's actionable under the Tax Debt Collection Act. There's certain things actionable under— Right, and so— But what made it incorrect? Pardon? What made it incorrect? You just add it up, and it's wrong. Under, they underestimated. The payments, they show what the payments missed are, and then they have the total, and it's wrong. So they're misrepresenting the— And did you plead, there's all this, there's been so many iterations of this, so many complaints in the district court. Did you plead that that was relied upon, or the district court initially threw it out saying you hadn't shown that there was belief? Yes, I believe so. Right. But— I find this whole thing a little, it seems, you know, we're pleading is all about plausibility. I think part of your argument is, oh, they thought, what was it, $14,000 had been taken out. Who doesn't know if $14,000 has been taken out of your bank account, especially someone, I mean, if your home's almost in foreclosure, you're not exactly going to have money all over the place. They denied that they agreed to that. They said they didn't agree to that. The bank said that. After they agreed to it, they denied that they agreed to it. But I thought your misrepresentation, oh, we talked on the phone, we thought they were withdrawing $14,000. Right. They thought— I just don't see how you, I mean, wouldn't you just look in your bank account and know whether $14,000 was in there or not? It's a lot of money. They knew pretty quick, but it was— So how did it harm them in any way? How did it harm them in any way, then, if they knew the bank hadn't done it? How did it harm them? Because they're in foreclosure as a result of this. Well, but if the bank didn't withdraw $14,000 on its own, you could have paid the $14,000. Anyone can write a check. Well, they were— If that's what they wanted to do. They were still maintaining the foreclosure. They were contending. Once they decided on foreclosure, the— Right. But if the misrep is—they said they were going to take $14,000 and withdraw it from our bank account and put it against the mortgage, and they didn't do that, and we knew they didn't do it.    I don't see that happening. I don't see that happening. I don't see that happening. I don't see that happening. Well, it's a misrepresentation under the Texas Debt Collection Act. I mean, it's actionable under the Texas Debt Collection Act. That's the point. I'm out of time. I realize— We've saved time for rebuttal. Pardon? Your time is out.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.    Thank you. Thank you. Thank you. Thank you. Thank you. May it please the Court, Darren Janus on behalf of the Appley-Wells Fargo Bank. I'd like to start by addressing briefly the arguments that were raised for the first time here at oral argument today on appeal. And I want to do that—obviously, those arguments were waived because they were not briefed, as counsel has admitted here. But I also don't want the Court to be confused about a couple of things. First of all, the notice of acceleration and notice of sale that's at issue in this case is being confused with the notice of default, which is what was talked about in the deed of trust. So the notice of default has to be sent at least 30 days before the loan is accelerated. But under the Texas Property Code, Section 51.002B, the notice of sale is 21 days. Exactly. You're on. Oh, I lived that. Eight years. Yes. So I wanted to clarify that. And you sent a number of notices of default. That's correct. Part of the dispute here. There are at least two in the record. And those were sent—this is my next point—were sent by first-class mail and certified. And certified. But what you have evidence of is obviously the certified. I think we got that. Well, there's also evidence that it was sent by first-class mail, and that's— Well, I mean the evidence in hand. In other words, the envelope. Because the first-class mail, you don't track the way you do a certified mail. I want to get back to the TDCA, because I have to say, first, I've ever heard—and that doesn't necessarily mean anything, but I've been involved in Texas litigation for over 30 years, and I never heard of the statute of frauds applying to the TDCA, when the point of that is that banks make misrepresentations—I mean, of course, if they made an agreement in writing, we wouldn't need the TDCA, because you enforce the agreement in writing. So I understand that you can't use the TDCA to rewrite the loan, but why is it not independently actionable—assuming, arguendo, that your bank did make misrepresentations, regardless of whether they were oral or written? There's two parts to the answer here. First, it has to do with what the issue is in this case, and what their TDCA claim is. Their claim, as I understand it, and I think as Judge Costa was describing it, is that there was this purported oral agreement that Wells Fargo allegedly breached, and because they breached it, there were subsequent misrepresentations of the amount owed. But I don't understand their argument to be that the agreement itself was a misrepresentation. I don't think an agreement can be a misrepresentation of amount owed, or the character extent of the debt. But, I mean, if a bank says over the phone, look, we'll just take the money out of your account, don't worry about it, we got you, and then they foreclose on you, the damage there would be the foreclosure. It's not that you're saying, okay, we need to go back and have this new contract that was waiving everything else in the past, but I didn't know you were going to foreclose on my house, and now all of a sudden I'm in that situation, and that caused me to have heart palpitations and whatever. I mean, I'm not making light of that, I'm just saying that's the argument. That is exactly, I mean, the whole reason you have these kinds of consumer protection statutes is exactly because you don't have an enforceable contract to rely on or whatever, but banks are making misrepresentations and shouldn't. Again, but... Oh, just ignore the foreclosure notice I sent, don't worry about it, and then they foreclose. Well, yeah, I think that would be actionable, even though that wasn't in writing. Now, explain to me how that's not. It's not actionable under the statute that they're citing of 392.304A8. That prohibits a misrepresentation of the character, extent, or amount of a consumer debt, and what you're describing, Judge Haynes, is not a good thing, but it's not a misrepresentation of the character, extent, or amount of a consumer debt. There are promises being made, and if those promises are broken, they might be actionable under a different theory, perhaps a breach of contract, but that's where the statute of frauds comes into play, so that it's not actionable because it's an oral agreement that's on the course. Okay, explain to me a misrepresentation that could be made that wouldn't violate the statute of frauds. I mean, the problem is that the... Sure. If the servicer sends a document, a payment history, let's say, that doesn't accurately reflect the payments that have been made. Well, they said you've done that, too, or your client did that, too. Well, they talk about the two notices of default in January and March of 2017. I'll point out that happened before this alleged oral agreement. They called Wells Fargo about the $14,000 because they got those notices of default, and the notices of default, if you look at their pleadings, all they say is that they admit that they missed three payments prior to those notices, but they don't say anything about the whole first year of this loan. They don't say that they made all of their payments during that first year, so they admit missing three, but they say nothing about whether they made all of the other payments, so they have not pleaded a plausible claim that those notices of default were inaccurate. There's a whole year of payments unaccounted for in their pleadings. Well, it also seems, I mean, if a bank said, oh, we know you owe a lot of money, but we're going to try to modify this with you, even though you owe this money, we're not going to foreclose for three months, if they did go ahead and foreclose, that would be a misrepresentation, but I mean, it does seem if the debt, if you're saying they mischaracterized the debt, the debt is what the contract provides for, right, and the statute of frauds determines, limits any changes to what the debt is. Right, if there's an oral agreement to modify the terms of the loan, the terms of the debt, then the statute of frauds would come into play. What is the purpose of these consumer protection statutes, like the TDCA, the DTPA, et cetera, if it's not to protect against things, because breach of contracts existed since, you know, the forefathers came on the ship, you know, so we don't need a bunch of statutes to tell us that. The point is exactly this, you've got disparate knowledge and ability and power between the bank and the ordinary consumer, and so we are trying to avoid banks doing just what you're accused of having done. Now, maybe you didn't do it, I'm not saying that, but that's what these statutes are for, and so to me, to use a contract defense against a misrepresentation consumer fraud statute seems odd. That's all I'm saying, and I'm just trying to understand it. I mean, I agree you couldn't therefore backdoor into an enforceable contract, I agree with that, but I don't know if that means you don't have a cause of action. And I'm not saying that they don't have any cause of action, but they don't have the cause of action that they have alleged here because the reason we brought up the statute of frauds is because they're saying that a subsequent representation was inaccurate because of this purported agreement. If there's no agreement, there's no misrepresentation later. That's why the statute of frauds was brought up in this case. We're not saying that the statute of frauds is always going to bar a TDCA claim. It's only going to bar it. Let's say someone owes 100 grand, and obviously if the bank says, oh, you owe us 150 grand, I mean, that's an actionable misrepresentation, that's misstating the amount of the debt. There's certainly a role for the statute there, but let's say there's an allegation that, you know, on a phone call someone said, we'll forgive half of that, you just owe us 50 grand. And then they, I mean, that's sort of this case, and then they send a bill that still says you owe 100 grand. I mean, that's, you have to figure out what the debt actually is to know if that's a misrepresentation, right? And the debt's, under the statute of frauds, the debt's still 100 grand, assuming it's real estate and all that. I think eventually you'd have to figure out what the debt is, but you're talking about a customer service representative on the phone saying something, and whether you're going to hold an entity and enforce that as an enforceable agreement. You're not enforcing it as an agreement. What you're enforcing it as is what consequences did it cause. If all they were trying to do is say, we hereby sue on the modified contract, or we sue to agree with you, however they characterized it. But the question is, are they then stringing them along, oh, we'll handle the 14,000, you'll be fine. So they think the 14,000's covered, they therefore don't write the check, as Judge Costa said they could have done, and that triggers then the foreclosure. And then they're in this foreclosure world that they're dealing with, which maybe isn't any damages. They have to prove mental language. That's a tough standard in Texas. But nonetheless, that's the claim they're making. And I'm not, maybe in this case it's not a particularly good claim, but is it barred by the statute of frauds? What you're describing, Judge Haynes, sounds to me like more of a fraud or a negligent misrepresentation type of claim. It would not be a claim under the TDCA for misrepresentation of the character extent. Well, I think you're kind of narrowly reading the TDCA with your argument there, because it does seem to be, you said an agreement can't ever be a misrepresentation, but it can be if they don't intend to do it. Like, let's string these people along, say we'll take the 14,000, then we don't. Because none of this makes sense to me. They're doing auto withdrawal, and then they stop doing it. Why are they stopping? They say they're going to take the 14,000, and then they don't do it. I mean, none of this has made a lick of sense to me, because it would seem like the bank would like to get paid rather than have the house. That's almost always true, unless there's something about this house I don't know. So nothing in this case makes any sense to me, but we have to address the fact that whatever we resolve in this case will impact other cases. And I'm disturbed by the notion that the statute of frauds precludes suits for misrepresentation under the TDCA, because that would mean it's a pretty useless statute. Well, I think that the court can decide that issue very narrowly based on how the claim was presented in this case and what the facts are in this case. There's a lot of reasons why an auto draft may have been stopped. They may not have had enough funds in their account to draw on. We don't know what bank that account was at, whether it's Wells Fargo or a different bank. So it's not like Wells Fargo had control of that transaction and could just take the money from their account. Well, we don't know, because you said we don't know what account it was. We don't know. It would seem like Wells Fargo would know whether it was Wells Fargo's account or not. Well, they do, but it's not in the record, and I would have to go outside to tell you what that is. And how could they take the $14,000 if it wasn't in their account? By the same mechanism. You can call a bank, you have your mortgage servicer, and set up a payment from your account at a different bank. That is done all the time. Right, but Wells Fargo can't call up Chase Bank and say, send me $14,000 from this family's account without there being something in writing from, or some document or something from the plaintiffs. There would need to be authorization. Right. Okay, as I said, this case doesn't make a lot of sense to me factually and just practically. Part of that may be because these TDCA claims were dealt with on a motion to dismiss, and so we don't have the benefit of all of the evidence that could potentially be. But have y'all never talked? I mean, they're still in this house, and they're not paying on the mortgage. Y'all are still sitting around your bank. Practically speaking, just as lawyer and counselor, it's hard for me to imagine that it hasn't come up that we need to resolve this. I don't know. I mean, we'll address the issues that are presented to us, that's fine. But it just, practically, I find this case hard to follow. There's always a desire to resolve it. It's not always possible or practical. Fair enough. It takes two sides. I get that. Judge Haynes, you had asked about whether there were other damages being alleged specific to the TDCA not tied to the oral agreement, and I'm not aware of any. Well, they're claiming mental anguish. I went back through their materials, and that was what, because I had that question, what are your damages? And they're claiming mental anguish. Again, that's a hard standard in Texas, I agree. But it's not a claim I can say on a motion to dismiss didn't happen. And I'm not sure that that's separate and apart from the underlying alleged breach of this oral agreement that they're alleging. I do want to touch briefly on going back to the notice issue, and actually, more specifically, the due process claim that they talked about in their brief. On the notice issue, it really, in my mind, is pretty simple. This court answered the question about notice in the LSR consulting opinion. It's directly on point. It's controlling a published decision of this court. And there's really not much more to say about that. On the due process, I do want to point out one thing. Because they've argued that they did not waive their due process claim, even though they didn't plead it in the district court. And they say that they didn't waive it because they've always been alleging this lack of notice issue that's kind of at the heart of their due process claim. What they did not allege was that Wells Fargo was a state actor. And that is an essential element of a due process claim. And so that was never pled until they filed their response to the motion for summary judgment. It was waived. And the last point I want to make, going back to the TDCA and Judge Costa, you had asked some questions about that escrow statement. And there is nothing untrue in that escrow statement. You're just looking at it on the face. It's not representing how much the past due amounts are on there. And that's what their TDCA claim really boils down to is that escrow statement. And there's just simply nothing untrue in there. That's all I have for the court. I'd be happy to answer any other questions. Otherwise, I'll see the rest of my time. Thank you, counsel. Thank you. Your Honor, on the issue of the TDCA and what was misrepresented, if you look at the language in the TDCA, this is on page 27 of our brief, it talks about what is actionable under the TDCA. And it says, fraudulent, deceptive, misleading representation that employs the following practices, misrepresenting the character, extent, or amount of a consumer debt or misrepresenting the consumer debt status in a judicial proceeding. So if you look on page, in our brief, we go through this misrepresentation on January the 17th in a letter, 2017, where Wells Fargo says that they're behind by $15,000. But if you add up the monthly payments, it's $9,000. So there's no explanation about what the $6,000 extra that just came out of nowhere. And we contend that's a misrepresentation of the character of the debt under the Texas Debt Collection Act, and that's actionable under that act. And the damages go beyond just mental anguish. The damages go into attorney's fees. They've had to pay us to do this, to appeal, to go through the court process. Y'all got hired just right after that letter was sent? Approximately, yes. So you were hired in response to that letter? I think we were hired after the foreclosure, when we got in it, because we represented them on the eviction in which they're paying $3,100 into the registry of the court for the eviction that would have been their payment. The mortgage company, Wells Fargo, would have gotten that if they had let my folks catch up. Well, that's why I said practically this case. It is. This shouldn't have happened. I mean, we shouldn't be here. Y'all are here. We're here, but we shouldn't be here. You're right. I wish we weren't. But, you know, that letter that was sent on the 13th of March that I referred to earlier is just such a sloppy thing on Wells Fargo's part. They're getting ready to foreclose, and they don't even mention it in this letter. I know it's like an update on what the payments are. The escrow prints out every year. But couldn't customer service, you know, we have computers, and couldn't they have looked in there? Oh, goodness, they're getting ready to get their foreclosure letter. They're getting ready to get accelerated. We better tell them, you know, we need to do something here. It's going to take more than just a payment. They thought at that point that the loan had been forgiven? No, no, no. How did they rely on that? And how were they harmed by that? Because they knew they were way behind. Well, it was more of being lulled into a false sense of security. They were behind, but they thought. They were going to write a check, but they got this March 13 notice and said, okay, thank heavens we don't have to write that check this month. No, I think it was more the idea that, well, they're working with us, we're going to get to this payment, and then. . . Where's the evidence of that in the record, that what they would have done but for this March 13 letter? Well, I mean, in the two affidavits that were attached to the response to the summary judgment, it goes into kind of what they were thinking, what was sort of happening, why this, you know, they were trying to get up. . . Tell me, straightforward, what's the evidence as to what they would have done but for this March 13 letter? Whatever that they would have done is in their affidavits. What is it? Tell me. I don't have it in front of me. Tell me. If they had relied on the March 13 letter? Tell me what they did. Tell me what they would have done differently but for the March 13 letter. Well, if they weren't lulled into that false sense of security, they would have tried to work with the mortgage company to avoid the foreclosure. You're saying that the March 13 letter caused them not to work with the mortgage company? I think it lulled them into a false sense of security, yes. I think that caused them to think everything's going to be okay, we can do a loan modification, a forbearance plan. Well, those claims were dismissed, right, on 12B6, the TDCA? The TDCA was, yes. Okay. What did you plead in your complaint? I don't think it was dismissed. I think it was the summary judgment took it. The summary judgment was on all of it? Yes. Okay. It got through the 12B6. Okay. Didn't you also use this letter, this escrow letter to say, I think you had a money-had-and-received claim, and your argument was that this letter means there was only one payment left until they owned the entire house, this one $3,000 payment, and therefore they should get all the rest of the equity in the house is due to them? No. Okay. I thought I saw. You didn't say the damages for the money-had-and-received was everything, the entire value of the house except for the one? We were talking here in the alternative. If the foreclosure was good, then there's a surplus, because under Boren, this court held that once you demand less than the total of the accelerated amount, that it weighs. Right. And you were saying this is saying the only payment left until they owned the whole house free and clear was $3,100? No. Okay. There's a surplus left. That's the thing that we're arguing for. I appreciate the time to be here, Your Honors, and I will hopefully see you next time. Just so you know, I mean, the district court spoke to 12B-6 in the order. Pardon? The district court cited 12B-6 in the order. Oh, the TDCA was dismissed? Well, hopefully you know the case better. Thank you. The court will take a brief recess.